UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDELITY & GUARANTY LIFE INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHN CHIANG, in his official capacity as CONTROLLER OF THE STATE OF CALIFORNIA,<br><br>          Defendant. | No.  2:14-cv-01837 JAM CKD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

     This matter is before the Court on Defendant John Chiang, the Controller of the State of California's ("Defendant" or "Controller") Motion to Dismiss (Doc. #20) Plaintiff Fidelity & Guaranty Life Insurance Company's ("Plaintiff" or "FGLIC") Complaint (Doc. #1).  Also before the Court is Plaintiff's Motion for a Preliminary Injunction (Doc. #9).  Plaintiff opposed Defendant's motion (Doc. #29) and Defendant opposed Plaintiff's motion (Doc. #19).  Both parties replied (Doc. ##31, 33).  For the following reasons, Defendant's Motion to Dismiss is granted

1

1  in part, and denied in part, and Plaintiff's Motion for a
2  Preliminary Injunction is denied.

3

4         I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND
5         Plaintiff FGLIC is a nationwide life insurance company.
6  Compl. ¶ 7.  Defendant is the Controller for the State of
7  California.  Compl. ¶ 3.  As Controller, Defendant is responsible
8  for the enforcement of the California Unclaimed Property Law
9  ("UPL").  Compl. ¶ 3.  The UPL requires certain persons and
10 entities, including Plaintiff, to report and remit unclaimed
11 property to the Controller.  Compl. ¶ 8.  Under the UPL,
12 "unclaimed property" includes life insurance proceeds for covered
13 individuals who have died.  Compl. ¶ 8.  The UPL also authorizes
14 the Controller "to examine the records of any person if the
15 Controller has reason to believe that the person is a holder who
16 has failed to report property that should have been reported
17 pursuant" to the UPL.  Cal. Code Civ. P. § 1571.  On August 14,
18 2013, Defendant notified Plaintiff that a third party had been
19 retained to conduct an audit of FGLIC "for unclaimed property
20 escheatable to the State of California" under the UPL.  Compl.
21 ¶ 15.

22        On November 6, 2013, Plaintiff commenced an action in this
23 Court against Defendant, claiming that the proposed audit
24 violated several federal constitutional principles and
25 provisions.  On July 23, 2014, the Court heard and granted
26 Defendant's motion to dismiss, on the ground that the action was
27 unripe for judicial review.  On August 4, 2014, Plaintiff filed a
28 new action in this Court against Defendant, which is

                                    2

1  substantially similar to the first action.  Doc. #1.  The only

2  significant difference between the initial complaint and the

3  present complaint are the additional allegations discussed below

4  as "recent developments."  Plaintiff's complaint alleges the

5  following causes of action: (1) "Declaratory Judgment – Commerce

6  Clause;" (2) "Declaratory Judgment – Substantive Due Process;"

7  (3) "Declaratory Judgment – Procedural Due Process;"

8  (4) "Declaratory Judgment – Due Process – Contingent-Fee;"

9  (5) "Declaratory Judgment – Unreasonable Search and Seizure;" and

10  (6) "Permanent Injunction."

11

12                    II.   RECENT DEVELOPMENTS

13       On July 23, 2014, Defendant's third party auditor – Kelmar –

14  emailed Plaintiff to request an opening conference.  Compl. ¶ 33.

15  Five days later, Plaintiff responded to Kelmar, in an attempt to

16  "get clarification on the scope of your requests in connection

17  with [the audit]."  Compl., Ex. G.  Plaintiff asked Kelmar

18  whether the initial document request was "intended to apply to

19  policy records for all states."  Kelmar responded that Plaintiff

20  should "have ready for us all . . . information that you are

21  comfortable providing in advance of the opening conference."

22  Compl., Ex. H.  The parties did not hold an opening conference,

23  because Plaintiff demanded information on the scope of the audit

24  before an opening conference took place, and Defendant refused to

25  provide this information prior to such a conference.  Compl.

26  ¶¶ 36-37.

27       On August 1, 2014, Defendant filed a lawsuit in Sacramento

28  County Superior Court to compel an audit of Plaintiff's records.

3

1  Compl. ¶ 38.  Included in Defendant's "Prayer for Relief" was a

2  request for "all damages and penalties due to the State,

3  including all penalties due under the applicable provisions of

4  California's UPL."  Clough Declaration, Ex. D.  After Plaintiff

5  filed the present lawsuit, Defendant amended its state court

6  complaint to remove the above-quoted language.  Clough

7  Declaration, Ex. G.

8      Finally, on August 4, 2014, Kelmar issued a second document

9  request to Plaintiff.  Compl. ¶ 40.  This request noted that

10 Plaintiff must "[p]rovide all annual unclaimed property reports

11 filed by or on behalf of [Plaintiff] regardless of state or

12 jurisdiction from January 1, 1986 to present."  Compl., Ex. O.

13

14            III.  JUDICIAL NOTICE

15     Defendant requests that the Court take judicial notice of an

16 excerpt from a report by the California Department of Finance

17 concerning proposed amendments to the UPL.  Defendant's Request

18 for Judicial Notice ("DRJN") (Doc. #32).  Plaintiff does not

19 oppose Defendant's request.

20     Generally, the Court may not consider material beyond the

21 pleadings in ruling on a motion to dismiss.  However, the Court

22 may take judicial notice of matters of public record, provided

23 that they are not subject to reasonable dispute.  See, e.g.,

24 Sherman v. Stryker Corp., 2009 WL 2241664 at *2 (C.D. Cal. 2009)

25 (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.

26 2001) and Fed. R. Evid. 201).

27     The proffered document is drawn from the public records of a

28 state agency – the California Department of Finance and the

4

1   information is not subject to reasonable dispute.   Therefore, it

2   is the proper subject of judicial notice.   <u>See</u> Fed. R. Evid. 201.

3

4                    IV.   MOTION TO DISMISS

5        A.   <u>Issue Preclusion</u>

6        Defendant argues that Plaintiff's claims are barred by the

7   doctrine of collateral estoppel, or issue preclusion, i.e., that

8   Plaintiff is improperly attempting to relitigate the issue of

9   ripeness, which was decided by the Court at the hearing on July

10  23, 2014.   MTD at 4.   In response, Plaintiff argues that, given

11  intervening events, circumstances have changed and the matter has

12  become ripe for review.   Opp. to MTD at 4.

13       The Ninth Circuit has held that the doctrine of "issue

14  preclusion" bars relitigation of issues adjudicated in an earlier

15  proceeding only if the following three requirements are met:

16  "(1) the issue necessarily decided at the previous proceeding is

17  identical to the one which is sought to be relitigated; (2) the

18  first proceeding ended with a final judgment on the merits; and

19  (3) the party against whom collateral estoppel is asserted was a

20  party or in privity with a party at the first proceeding."

21  <u>Skilstaf, Inc. v. CVS Caremark Corp.</u>, 669 F.3d 1005, 1021 (9th

22  Cir. 2012).   The parties do not appear to dispute that the first

23  and third requirements are met.   The Court's inquiry turns on

24  whether the Court's July 23, 2014 ruling was a "final judgment on

25  the merits."

26       Rule 41(b) of the Federal Rules of Civil Procedure provides

27  that a dismissal for lack of jurisdiction – such as a dismissal

28  on ripeness grounds – does not constitute an adjudication on the

5

merits.   The Ninth Circuit has held that ripeness is a "curable defect in jurisdiction" that may be relitigated "after correction of the deficiency."  Wolfson v. Brammer, 616 F.3d 1045, 1064 (9th Cir. 2010).   Accordingly, the questions of "issue preclusion" and ripeness collapse into a single inquiry: whether the action – as currently pleaded – is ripe.

    B.   Ripeness

    Defendant argues that the matter remains unripe for judicial review because circumstances have not significantly changed since the July 23, 2014 hearing.   MTD at 7.   Specifically, Defendant argues that it has disavowed any intention to fine Plaintiff for non-compliance with the audit, and has stricken language from its state court complaint that could be interpreted otherwise.   MTD at 8.   Plaintiff, on the other hand, argues that the matter has become ripe for two reasons: (1) the scope of the audit has been defined by the actions of Defendant, and (2) the threat of judicial enforcement is no longer speculative.   Opp. to MTD at 6.

    For a case to be justiciable under Article III of the Constitution, it must be ripe for judicial review.   Hillblom v. United States, 896 F.2d 426, 430 (9th Cir. 1990).   A controversy is justiciable if it is "definite and concrete, touching the legal relations of parties having adverse legal interests."  Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937).   Conversely, a matter is not ripe for judicial review when the "alleged injury is too 'imaginary' or 'speculative' to support jurisdiction."   Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000).

    The first "change in circumstances" identified by Plaintiff

is that, after the July 23 hearing, the scope of the audit has become more precisely defined.  Opp. to MTD at 4.  Plaintiff notes that the second document request issued by Kelmar now requires that Plaintiff "[p]rovide all annual unclaimed property reports filed by or on behalf of [Plaintiff] *regardless of state or jurisdiction* from January 1, 1986 to present."  Compl., Ex. O (emphasis added).  Similar jurisdictional language did not appear in the initial document request.

Plaintiff also notes that its repeated inquiries as to the scope of the audit have gone unanswered.  Opp. to MTD at 5. After the July 23 hearing, Plaintiff sent an email to Defendant's agent, Kelmar, in an attempt to "get clarification on the scope of your requests in connection with [the audit]."  Compl., Ex. G. Plaintiff asked Kelmar whether the initial document request is "intended to apply to policy records for all states."  Kelmar responded, somewhat obliquely, that Plaintiff should "have ready for us all . . . information that you are comfortable providing in advance of the opening conference."  Compl., Ex. H. Plaintiff's attorneys also contacted Defendant's counsel with questions about the scope of the lawsuit.  Compl., Ex. M. Defendant's counsel declined to answer those questions until the opening conference had taken place.  Compl., Ex. N.  In light of these recent developments – especially the new requirement that Plaintiff provide all unclaimed property reports "regardless of state or jurisdiction," – the scope of the audit is now more precisely defined than it was at the time of the July 23 hearing. The absence of jurisdictional bounds on the inquiry does not mean that the audit's scope is undefined; rather, its scope is

1  unlimited but clearly defined.  Thus, it cannot be said that the

2  "alleged injury is too 'imaginary' or 'speculative' to support

3  jurisdiction." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d

4  1134, 1139 (9th Cir. 2000).

5      The second "change in circumstances" relied upon by

6  Plaintiff is that Defendant has "eliminated uncertainty about

7  judicial enforcement by initiating a lawsuit in California state

8  court seeking to compel [Plaintiff's] compliance with his

9  proposed unlimited audit."  Opp. to MTD at 6.  As noted by

10  Plaintiff, Defendant's state court complaint seeks a preliminary

11  and permanent injunction requiring Plaintiff to submit to a

12  "full, complete and timely examination of all [of Plaintiff's]

13  books and records[.]"  Clough Declaration, Ex. G.

14      Under the pending state lawsuit, Plaintiff faces an injury

15  that is neither "imaginary" nor "speculative." Thomas, 220 F.3d

16  at 1139.  Despite Defendant's contention that "the costs of

17  complying with the Controller's records examination . . . impose

18  no direct and immediate practical effects on [Plaintiff's]

19  business," the Court is obligated to take Plaintiff's allegations

20  as true when ruling on a motion to dismiss.  MTD Reply at 4.

21  Plaintiff affirmatively alleges that "[c]ompliance with [the

22  audit] will cost [Plaintiff] hundreds of thousands of dollars."

23  Compl. ¶ 42.  Defendant's argument to the contrary is

24  significantly weakened by its reliance on cases applying the

25  ripeness argument to administrative agency action.  MTD Reply at

26  4 (citing F.T.C. v. Standard Oil Co. of California, 449 U.S. 232,

27  242 (1980) and Univ. of Med. & Dentistry of New Jersey v.

28  Corrigan, 347 F.3d 57, 68 (3d Cir. 2003)).  As discussed below,

1    these cases are inextricably linked to the unique language of the

2    APA regarding judicial review of agency action.  Outside of the

3    administrative agency context, Defendant's argument that the cost

4    of "hundreds of thousands of dollars" does not constitute

5    concrete injury fails.

6         Defendant's argument that the audit is not a "definitive

7    statement of [its] position" is unavailing due to its continued

8    reliance on Association of American Medical Colleges and other

9    cases applying the ripeness doctrine to administrative agency

10   action.  MTD Reply at 2-5 (citing Ass'n of Am. Med. Colleges v.

11   United States, 217 F.3d 770 (9th Cir. 2000) and Corrigan, 347

12   F.3d at 57).  These cases address the manner in which a federal

13   court should approach judicial review of an action or decision by

14   a federal administrative agency.  This case law closely follows

15   the language of the Administrative Procedure Act, and was

16   developed to preserve the delicate balance between the judiciary

17   branch and federal administrative agencies.  The Controller, of

18   course, is not a federal administrative agency; rather, he is a

19   state elected official.  Moreover, the requirement that an agency

20   action be "final" before the matter is ripe for review is taken

21   directly from the APA.  Univ. of Med. & Dentistry of New Jersey

22   v. Corrigan, 347 F.3d 57, 68 (3d Cir. 2003).  The Controller's

23   actions are not "agency actions," and therefore there is no

24   requirement that they be "final" under the APA.  Regardless, the

25   most important distinction between these cases and the case at

26   hand is that here, Plaintiff has challenged the audit itself, not

27   the regulatory standard to be applied subsequent to the audit.

28   See Ass'n of Am. Med. Colleges v. United States, 217 F.3d 770

1  (9th Cir. 2000) (holding that the matter was not ripe for

2  judicial review because an audit was not a final agency action,

3  where the plaintiff had challenged *the substantive standards to*

4  *be applied* in evaluating regulatory compliance).

5      The parties dispute whether Defendant has the authority or

6  the intent to impose penalties on Plaintiff for failure to comply

7  with the audit.  Plaintiff points to the broadly written

8  penalties provision of the UPL, which provides that "[a]ny person

9  who willfully fails to . . . perform other duties . . . required

10  under this chapter shall be punished by a fine of" not more than

11  $10,000.  Opp. to MTD (citing Cal. Code Civ. P. § 1576(a)).

12  Plaintiff also notes that Defendant's original state court

13  complaint requested "all damages and penalties due to the State,

14  including all penalties due under applicable provisions of

15  California's UPL."  Compl. ¶ 38.  Defendant maintains that it

16  does not intend to fine Plaintiff for non-compliance with *the*

17  *audit*, but only for noncompliance with the UPL's reporting

18  requirements, if violations are found.  MTD at 7.  To that end,

19  Defendant amended its state court complaint to delete the request

20  for relief quoted above.  MTD at 8.  Although Defendant has

21  professed its intent not to seek fines from Plaintiff for failure

22  to comply with the audit, it has not signed a waiver to that

23  effect.  Opp. to MTD at 8.  Given the broad language of

24  § 1576(a), it appears that Defendant has the authority to impose

25  such fines.  Thus, not only does Plaintiff face the threat of

26  immediate injury of the cost of complying with the audit, it also

27  faces the possibility of financial penalties for failure to

28  comply with an audit that it maintains is unconstitutional.  This

1  constitutes injury-in-fact, and the case is ripe for judicial
2  review.

3      Given these changes in circumstances – the further
4  clarification of the audit's scope and Defendant's enforcement
5  action in state court – the matter is ripe for judicial review
6  and the jurisdictional defect has been remedied.  Defendant's
7  motion to dismiss on ripeness grounds is DENIED.  The remaining
8  arguments in support of Defendant's motion to dismiss Plaintiff's
9  claims will now be addressed by the Court.

10     C.    Failure to State a Claim
11           1.    Commerce Clause – First Cause of Action
12     Defendant argues that Plaintiff's dormant Commerce Clause
13 cause of action must be dismissed for failure to state a claim.
14 MTD at 10.  Defendant argues that Plaintiff has not alleged that
15 the UPL is discriminatory against out-of-state insurance
16 companies.  MTD at 10.  Plaintiff responds that the UPL is
17 "directly regulating" interstate commerce, which constitutes a
18 per se violation of the dormant Commerce Clause.  Opp. to MTD at
19 9.  Plaintiff also argues that the UPL excessively burdens
20 interstate commerce.  Opp. to MTD at 11.

21     The dormant Commerce Clause primarily prohibits state
22 statutes which discriminate against out-of-state commerce.  Nat'l
23 Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1148
24 (9th Cir. 2012).  However, the dormant Commerce Clause also
25 prohibits state statutes that excessively burden interstate
26 commerce, and as well as those that directly regulate interstate
27 commerce.  Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 125
28 (1978); Edgar v. MITE Corp., 457 U.S. 624, 640 (1982).

1    Plaintiff alleges that Defendant seeks to audit "all of

2  [FGLIC's] business records, wherever the records are located,

3  regardless of whether the records have a connection to

4  California, and irrespective of the provisions of any of the

5  other 49 States' unclaimed property laws."  Compl. ¶ 48.

6  Plaintiff appears to be suggesting that the UPL directly

7  regulates interstate commerce because it will require interstate

8  insurance companies to maintain records indefinitely.  Opp. to

9  MTD at 11.  However, Plaintiff cites no authority for its

10  position that this constitutes "direct regulation" of commerce.

11  Indeed, Plaintiff fails to analogize the current case to any

12  other factually similar circumstances concerning direct

13  regulation.  In the absence of relevant case law, or a more

14  specific explanation as to how an incidental record-preservation

15  requirement constitutes "direct regulation," the Court rejects

16  this argument.

17    Plaintiff also argues that "the Controller's proposed audit

18  scheme will substantially burden interstate commerce generally by

19  imposing California's state audit laws on a nationwide basis."

20  Opp. to MTD at 11.  However, at most, this merely constitutes an

21  allegation that other interstate companies will be similarly

22  burdened by the UPL.  The dormant Commerce Clause "protects the

23  interstate market, not particular interstate firms, from

24  prohibitive or burdensome regulations."  Exxon Corp. v. Governor

25  of Maryland, 437 U.S. 117, 127-28 (1978).  Accordingly, Plaintiff

26  has failed to sufficiently allege that the UPL burdens interstate

27  commerce.

28    For these reasons, the allegations that the UPL directly

12

1  regulates interstate commerce and "substantially and excessively

2  burdens interstate commerce" are conclusory and insufficient to

3  state a claim.  Defendant's motion to dismiss Plaintiff's first

4  cause of action is GRANTED.

5                    2.   <u>Substantive and Procedural Due Process –
                          Second and Third Causes of Action</u>
6

7       Defendant argues that Plaintiff has failed to state

8  substantive and procedural due process claims.  MTD at 12.

9  Defendant maintains that Plaintiff has not established that the

10  proposed audit would deprive it of a protected liberty or

11  property interest, and that even if it would, it would not do so

12  in a constitutionally arbitrary manner.  MTD at 12.  Plaintiff

13  responds that: (1) the proposed audit would deprive it of "its

14  rights to pursue its business, to use its money, and to

15  contract."  Opp. to MTD at 12; (2) the audit has no rational

16  relationship to the interests of California.  Opp. to MTD at 14;

17  and (3) Defendant has "unilaterally and unlawfully revised the

18  UPL by amending his 'Holder Handbook,'" without "prior notice or

19  other procedural protections."  Opp. to MTD at 12-13.

20       To state a substantive due process claim, a plaintiff must

21  allege (1) a deprivation (2) of a liberty or property interest

22  (3) under color of state law.  <u>Samson v. City of Bainbridge

23  Island</u>, 683 F.3d 1051, 1057 (9th Cir. 2012).  When the

24  governmental action at issue is economic in nature, a plaintiff

25  must also allege that the action was "clearly arbitrary and

26  unreasonable, having no substantial relation to the public

27  health, safety, morals or general welfare."  <u>Samson</u>, 683 F.3d at

28  1057.  To state a procedural due process claim, a plaintiff must

allege that the deprivation occurred without constitutionally
adequate process.  Shanks v. Dressel, 540 F.3d 1082, 1089 (9th
Cir. 2008).

Plaintiff has alleged that the audit "will cost . . .
hundreds of thousands of dollars."  Compl. ¶ 42.  It is
"undisputed that money constitutes a property interest protected
by the Fourteenth Amendment."  Schwarm v. Craighead, 552 F. Supp.
2d 1056, 1083 (E.D. Cal. 2008).  Defendant cites Easter House for
the proposition that the costs of complying with an audit do not
"rise to the level of a constitutional deprivation of property."
Easter House v. Felder, 879 F.2d 1458, 1477 (7th Cir. 1989).
However, this out-of-circuit case is not binding on the Court,
and there is no indication that the "costs" in Easter House
approached the "hundreds of thousands of dollars" alleged here.
As such, Easter House is not persuasive authority.

As Plaintiff has alleged that the audit would deprive it of
a protected property interest, the only remaining issue in
Plaintiff's substantive due process claim is whether the audit is
"clearly arbitrary and unreasonable."  Samson, 683 F.3d at 1057.
Plaintiff alleges that the audit will "arbitrarily, irrationally,
and without a legitimate government objective or purpose" deprive
it of property because the audit "has no temporal or geographic
limitations and that is outside of the scope of the [UPL]."  FAC
¶ 54.  Plaintiff argues that the audit "has no rational
relationship to the interests of California," because it will be
reviewing property that does not escheat to California under the
UPL.  Opp. to MTD at 18.  The Ninth Circuit has cautioned against
granting motions to dismiss substantive due process claims where

1    arbitrary governmental action is specifically alleged.  <u>Del Monte</u>

2    <u>Dunes at Monterey, Ltd. v. City of Monterey</u>, 920 F.2d 1496, 1508

3    (9th Cir. 1990).  Because Plaintiff has sufficiently alleged all

4    of the elements of its substantive due process claim, and these

5    allegations must be taken as true, Defendant's motion to dismiss

6    the second cause of action is DENIED.

7        With regard to the procedural due process claim, Plaintiff

8    must allege that the deprivation occurred without

9    constitutionally adequate process.  Plaintiff appears to base its

10   procedural due process claim solely on the Controller's amendment

11   to the "Holder's Handbook."  Plaintiff alleges that the amendment

12   "seeks to change the circumstances under which a life insurance

13   policy is 'deemed matured' for purposes of remitting unclaimed

14   life insurance proceeds to the State of California."  Compl.

15   ¶ 19.  Specifically, "all life insurance policies are deemed to

16   have matured under the [UPL] if proof of death is established by

17   comparing a company's records to the [Social Security Death

18   Master File]."  Compl. ¶ 20.  Plaintiff argues that this

19   amendment is inconsistent with the UPL and occurred "without

20   prior notice" to FGLIC.  Compl. ¶ 22.  Defendant responds that

21   the Handbook is not binding, but merely meant to provide

22   "guidance for the benefit of holders of unclaimed property."  MTD

23   Reply at 8, n.7.  Regardless, the amendment to the Handbook is

24   not relevant to Plaintiff's lawsuit.  Plaintiff has claimed that

25   the audit itself (not the eventual enforcement of the UPL

26   provisions) is a constitutional harm.  Here, the protected

27   property interest is the cost of the audit to Plaintiff.  To

28   argue otherwise would raise serious ripeness concerns.  <u>See</u> <u>supra</u>

15

1   at III(B)(1)(b), page 10.  Accordingly, the substantive

2   provisions of the Handbook and the UPL are not relevant, and the

3   amendment of the Handbook cannot serve as the basis for

4   Plaintiff's due process claim.  As Plaintiff has not argued any

5   other procedural due process violation, Defendant's motion to

6   dismiss Plaintiff's third cause of action is GRANTED.

7          3.    Due Process – Contingent Fee – Fourth Cause of
               Action
8

9        Defendant argues that the Court must dismiss Plaintiff's

10  fourth cause of action, which alleges that Plaintiff's due

11  process is violated by Defendant's retention of a third-party

12  auditor pursuant to a contingent fee.  MTD at 14.  Defendant

13  notes that this practice is common, and widely accepted, in

14  multiple states.  MTD at 14.  Plaintiff responds that its

15  objection is not to the contingent-fee arrangement, but to the

16  Controller's improper delegation of the "authority to act in a

17  judicial or quasi-judicial capacity" to a third-party auditor,

18  which has a financial incentive to find violations.  Opp. to MTD

19  at 15.  Defendant responds that neither the Controller nor the

20  auditor have a judicial or quasi-judicial role – that is reserved

21  for the courts.  MTD Reply at 8.

22       "Officers acting in a judicial or quasi judicial capacity"

23  may not have a financial interest in the outcome of the

24  proceeding.  Tumey v. State of Ohio, 273 U.S. 510, 522 (1927).

25  In Tumey, the Supreme Court held that a city ordinance which

26  authorized the mayor to preside over prohibition trials, and

27  collect costs upon a finding of guilty, violated due process.

28  Tumey, 273 U.S. at 522.

16

1     This rule, of course, only applies when the official is

2   acting in a judicial or quasi-judicial capacity.  Here, the

3   Controller cannot delegate judicial or quasi-judicial capacity to

4   a third-party auditor, because he does not maintain that status

5   in the first place.  The UPL specifically provides that the

6   Controller must bring an action in state court "for a judicial

7   determination that particular property is subject to escheat"

8   under the UPL or "to enforce the delivery of any property to the

9   State Controller as required" under the UPL.  Cal. Civ. Proc.

10  Code § 1572.  Accordingly, the UPL does not grant the Controller

11  judicial or quasi-judicial authority to make self-enforcing

12  judgments as to the status of property.  Therefore, even taking

13  the allegations in the Complaint as true, the Court must dismiss

14  this claim.  The allegation that Defendant has "unlawfully

15  delegated . . . the power to act in a judicial or quasi-judicial

16  capacity" to a third-party auditor is both conclusory, and

17  contradicted by the terms of the UPL itself.  Compl. ¶ 66.

18  Accordingly, Defendant's motion to dismiss Plaintiff's fourth

19  cause of action is GRANTED.

20          4.   Fourth Amendment – Fifth Cause of Action

21      Defendant argues that Plaintiff's Fourth Amendment claim

22  must be dismissed because the proposed audit complies with Fourth

23  Amendment requirements for administrative subpoenas.  MTD at 15.

24  Plaintiff argues that a different Fourth Amendment standard –

25  that used for warrantless searches of physical property – applies

26  and that the audit violates that standard.  Opp. to MTD at 18.

27      The Fourth Amendment protects commercial privacy interests.

28  New York v. Burger, 482 U.S. 691, 699-700 (1987).  However, in

1  the context of an administrative subpoena, these protections are

2  limited.  Reich v. Montana Sulphur & Chem. Co., 32 F.3d 440, 448

3  (9th Cir. 1994).  An administrative subpoena is reasonable under

4  the Fourth Amendment as long as the following criteria are

5  satisfied: (1) the inquiry must be within the authority of the

6  agency, (2) the demand must not be too indefinite, and (3) the

7  information sought must be reasonably relevant.  United States v.

8  Morton Salt Co., 338 U.S. 632, 652-53 (1950).

9       Although the Controller did not issue an administrative

10  subpoena in this case, the proposed audit is the functional

11  equivalent of an administrative subpoena.  The audit's compliance

12  with the Fourth Amendment is, therefore, analyzed under the

13  administrative subpoena standard set forth above.  See Big Ridge,

14  Inc. v. Fed. Mine Safety & Health Review Comm'n, 715 F.3d 631,

15  646 (7th Cir. 2013) (holding that courts "look to the substance

16  of [the statute's] inspection power rather than how the [statute]

17  nominally refers to those powers;" where the "power at issue . .

18  . more closely resembles an administrative subpoena than a search

19  or seizure," the more limited Fourth Amendment standard is

20  appropriate).  The audit at issue in this case is reasonable

21  under the Fourth Amendment as long as (1) the audit is within the

22  authority of the Controller; (2) the demand for documents is not

23  too indefinite; and (3) the documents sought are reasonably

24  relevant.  Morton Salt, 338 U.S. at 652-53.

25       The audit is within the authority of the Controller.  The

26  UPL gives the Controller authority "to examine the records of any

27  person if the Controller has reason to believe that the person is

28  a holder who has failed to report property that should have been

reported" pursuant to the UPL.  Cal. Civ. Proc. Code § 1571.  The

Court also finds that the demand for documents is not too

indefinite.  At no point does Plaintiff allege that the document

requests are too vague for it to identify which documents must be

turned over.  Rather, Plaintiff's complaint is that the request

for documents is overbroad, which is a separate and distinct

concern from "indefinite."  Compl. ¶ 54.  Finally, the documents

sought are reasonably relevant to the Controller's inquiry.  The

documents sought relate to the tracking of unreported deaths and

unclaimed benefits, and the reporting of unclaimed property to

the Controller.  Although Defendant seeks documents which have no

facial connection to California, the UPL provides that some

property may be escheatable to California despite the lack of a

California address on the face of a company's records.

Specifically, the UPL states that property may escheat to

California if "[n]o address of the apparent owner appears on the

record of the holder and . . . [t]he last known address of the

apparent owner is in this state."  Cal. Civ. Proc. Code

§ 1510(b)(1).  Because the Fourth Amendment criteria applicable

to Defendant's audit are satisfied, Defendant's motion to dismiss

the fifth cause of action is GRANTED.[1]

---

[1] Plaintiff's argument that the administrative subpoena Fourth
Amendment standard does not apply is unpersuasive.  Opp. to MTD
at 18.  The cases relied upon by Plaintiff concern warrantless
searches of commercial premises.  The physical invasion and
search of a location, without a warrant, is far more invasive
than a demand for documents.  The Fourth Amendment standard for
administrative subpoenas is more lenient, and restrictions are
more "limited" in this context.  Reich v. Montana Sulphur & Chem.
Co., 32 F.3d 440, 448 (9th Cir. 1994).  As the case law and the
interests implicated are markedly different, the Court declines
to apply the standard for warrantless searches of commercial
premises to the audit request at issue in this case.

1        5.   Permanent Injunction – Sixth Cause of Action

2        Plaintiff's sixth cause of action requests a permanent

3  injunction.  As this claim is derivative of Plaintiff's other

4  claims, and at least one of these claims survives the motion to

5  dismiss, the permanent injunction claim also survives.

6  Defendant's motion to dismiss Plaintiff's sixth cause of action

7  is DENIED.

8        6.   Leave to Amend

9        The parties agree on most, if not all, of the underlying

10  facts.  The dismissal of Plaintiff's first, third, fourth, and

11  fifth causes of action is based on purely legal grounds, not on

12  the failure to sufficiently plead factual allegations.

13  Accordingly, amendment of the complaint would be futile, and

14  Defendant's motion to dismiss Plaintiff's first, third, fourth,

15  and fifth causes of action is GRANTED WITHOUT LEAVE TO AMEND.

16  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052

17  (9th Cir. 2003).

18

19             V.   MOTION FOR PRELIMINARY INJUNCTION

20        Plaintiff moves for a preliminary injunction "prohibiting

21  the Controller from conducting – or authorizing or directing –

22  any third party to conduct an audit or other examination of FGLIC

23  and its affiliates that violates the rights and protections

24  afforded by the United States Constitution."  MPI at 1.

25        "The purpose of a preliminary injunction is merely to

26  preserve the relative positions of the parties until a trial on

27  the merits can be held."  Univ. of Texas v. Camenisch, 451 U.S.

28  390, 395 (1981).  A plaintiff requesting a preliminary injunction

                              20

1   must establish: (1) a likelihood of success on the merits, (2) a

2   likelihood of irreparable harm in the absence of preliminary

3   relief, (3) that the balance of equities tips in his favor, and

4   (4) that an injunction is in the public interest.  Shell

5   Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1289 (9th Cir.

6   2013).  Further, "[a] showing of serious questions going to the

7   merits may be sufficient to warrant issuance of a preliminary

8   injunction where the balance of the hardships tips sharply in the

9   plaintiff's favor and the other factors are satisfied." Coltharp

10   v. Herrera, 2014 WL 3720302, at *2 (9th Cir. July 29, 2014).  "A

11   preliminary injunction is an extraordinary and drastic remedy,

12   one that should not be granted unless the movant, by a clear

13   showing, carries the burden of persuasion." Lopez v. Brewer, 680

14   F.3d 1068, 1072 (9th Cir. 2012).

15        As discussed above, only Plaintiff's substantive due process

16   claim survives Defendant's motion to dismiss.  Therefore, for the

17   Court to grant Plaintiff's motion for a preliminary injunction,

18   Plaintiff's substantive due process claim alone must satisfy the

19   Ninth Circuit's four prong test.  Plaintiff must establish that

20   it is likely to succeed on the merits of this claim, or – at the

21   very least – that serious questions exist as to its merits.  See

22   Coltharp, 2014 WL 3720302, at *2.

23        As the audit implicates economic rights only, Plaintiff must

24   demonstrate that the audit is "clearly arbitrary and

25   unreasonable" to succeed on its substantive due process claim.

26   Samson v. City of Bainbridge Island, 683 F.3d 1051, 1057 (9th

27   Cir. 2012).  Under this "rational basis" test, Plaintiff must

28   show that the audit lacks "any reasonable justification in the

21

1   service of a legitimate governmental objective."  Shanks v.

2   Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008).  Plaintiff has

3   failed to meet this exceedingly difficult test.

4        Plaintiff does not contend that the UPL fails to serve a

5   legitimate governmental objective, but instead argues that the

6   "unlimited, national audit of records bearing no relationship to

7   California is not supported by the [UPL]."  MPI at 16.  Plaintiff

8   maintains that, under the UPL, "unclaimed property does not

9   escheat to California . . . unless the address of the person

10  entitled to the unclaimed property is in California – as

11  determined by the company's records."  MPI at 16.  Plaintiff's

12  characterization of the UPL is inaccurate.  The UPL provides that

13  property may be escheatable to California despite the lack of a

14  California address on the face of a company's records.

15  Specifically, the UPL states that property may escheat to

16  California if "[n]o address of the apparent owner appears on the

17  record of the holder and . . . [t]he last known address of the

18  apparent owner is in this state."  Cal. Civ. Proc. Code

19  § 1510(b)(1).  Accordingly, even documents which have no facial

20  connection to California may be relevant under the UPL.

21  Therefore, the extension of the audit's scope to include all life

22  insurance policies nationwide – not just those which include a

23  California address for the owner of the policy – is not so

24  "clearly arbitrary and unreasonable" as to make it likely that

25  Plaintiff will succeed on the merits of this claim.

26       At this very early stage of the litigation, Plaintiff has,

27  at best, established a possibility of success on the merits of

28  its remaining claim.  The Ninth Circuit has made it clear,

1  however, that a possibility is not the same as likelihood of

2  success.   See Sw. Voter Registration Educ. Project v. Shelley,

3  344 F.3d 914, 919 (9th Cir. 2003).   Having failed to satisfy the

4  first prong of the Ninth Circuit's test, the Court DENIES

5  Plaintiff's motion for a preliminary injunction, and need not

6  reach the parties' arguments concerning the remaining three

7  requirements of the four prong test.

8

9                          VI.   ORDER

10       For the reasons set forth above, the Court GRANTS in part,

11  and DENIES in part, Defendant's Motion to Dismiss, and DENIES

12  Plaintiff's Motion for a Preliminary Injunction.   Plaintiff's

13  first, third, fourth, and fifth causes of action are DISMISSED

14  WITHOUT LEAVE TO AMEND.   The action will proceed consistent with

15  this Order.

16       IT IS SO ORDERED.

17  Dated: November 12, 2014

18

19                                           JOHN A. MENDEZ,
                                             UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

                                  23